DECISION
{¶ 1} Relator, Laura N. Wilson, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied her request for temporary total disability compensation, and to enter a new order finding that she is entitled to such compensation based on new and changed circumstances.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. No objections have been filed to the magistrate's decision.
 {¶ 3} Upon a review of the magistrate's decision and an independent review of the record, this court finds that there is no error or other defect of law on the face of the magistrate's decision and adopts it as its own. As the magistrate correctly found, a request for a new medical procedure without a change in the underlying medical condition is not a new and changed circumstance. Therefore, the requested writ of mandamus is denied.
Writ of mandamus denied.
Bryant and Klatt, JJ., concur.
BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
 State of Ohio ex rel. Laura N. Wilson, :
 Relator, :
 v. : No. 04AP-577
 The Industrial Commission of Ohio and : (REGULAR CALENDAR)
 Navistar International Transportation :
 Corporation, :
 Respondents. :

 MAGISTRATE'S DECISION Rendered on November 30, 2004 Hochman, Roach Plunkett, L.P.A., Gary D. Plunkett and BrettBissonnette, for relator.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
Vorys, Sater, Seymour and Pease, LLP, and Joseph A. Brunetto, for respondent Navistar International Transportation Corporation.
 IN MANDAMUS {¶ 4} Relator, Laura N. Wilson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her request for temporary total disability ("TTD") compensation from July 20, 2002 through July 31, 2003, and ordering the commission to find that she is entitled to that requested period of TTD compensation based upon new and changed circumstances.
Findings of Fact:
 {¶ 5} 1. Relator sustained a work-related injury on April 5, 2000, and her claim has been allowed for "sprain lumbosacral; right sciatica; herniated nucleus pulposis L4-L5; radiculitis spinal nerve root."
 {¶ 6} 2. Relator began receiving TTD compensation following her injury in April 2000.
 {¶ 7} 3. On May 23, 2002, respondent Navistar International Transportation Corporation ("employer") filed a motion asking the commission to terminate relator's TTD compensation based upon a finding that she had reached maximum medical improvement ("MMI"). The employer attached the May 16, 2002 report of Dr. Gerald S. Steiman, who opined that relator had reached MMI.
 {¶ 8} 4. In response thereto, relator submitted an additional C-84 from her treating physician, Dr. Paul E. Andorfer, and notes indicating that relator was a candidate for a surgical procedure identified as "IDet."
 {¶ 9} 5. The employer's motion to terminate TTD compensation was heard before a district hearing officer ("DHO") on July 19, 2002, and resulted in an order granting the employer's motion and terminating TTD compensation as follows:
Based on the convincing and persuasive 05/16/2001 report of Dr. G.S. Steiman, M.D., claimant's allowed conditions are found to be at maximum medical improvement, at this time. Therefore, temporary total compensation is terminated as of the date of this hearing 07/19/2002. The 06/14/2002 report of physician of record, Dr. Andorfer, is found not persuasive as to temporary total disability, at this time.
(Emphasis sic.)
 {¶ 10} 6. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on August 20, 2002, and resulted in an order affirming the prior DHO order.
 {¶ 11} 7. Relator's appeal was denied by order of the commission mailed September 13, 2003.
 {¶ 12} 8. Dr. Andorfer referred relator to Dr. G. Todd Schulte, who issued a report dated August 5, 2002, wherein he noted as follows:
Impression:
1. Intravertebral disk disorder, L4-5.
2. Lumbosacral radiculopathy.
3. History of lumbar sprain/strain injury.
Plan: At this point, Paul, I think that this is probably one of the best patients I have seen as a candidate for nucleoplasty. She has radicular pain, a positive discogram, and she is fairly young. In addition to that, her MRI scan correlates with her findings on CT discography as well as her pain pattern. I have discussed with Laura the risk and benefits associated with nucleoplasty including the risk of infection, bleeding, nerve trauma, intravascular intrathecal injection abscess, hematoma, anesthetic-related complications, or failure for her pain to improve or even the possibility of it worsening. Laura would like to proceed in the near future.
As always, Paul, I appreciate the opportunity to be involved in the care of your patients. We would like to work on the C9 form to get permission as quickly as possible.
 {¶ 13} 9. On September 25, 2002, relator's treating physician, Dr. Andorfer, submitted a C-9 requesting authorization for the "IDet" procedure to be performed.
 {¶ 14} 10. Relator was re-evaluated by Dr. Steiman on November 10, 2003, who opined again that she had reached MMI, that her condition appears permanent, stable, and unlikely to change, and who stated that, in his opinion, relator was not a candidate for the "IDET" procedure which he described as experimental and unproven.
 {¶ 15} 11. Dr. Andorfer issued a follow-up report dated February 2, 2003, wherein he concluded as follows:
* * * IDET, while it may not cure the patient, is an option of relatively low risk which may reduce severity of symptoms and allow for rehabilitation to a medium to light duty work level. * * *
 {¶ 16} 12. Relator's request for authorization of treatment and for TTD compensation was heard before a DHO on February 3, 2003. The DHO authorized treatment as well as TTD compensation from the date of the surgery on as follows:
The District Hearing Officer orders that authorization be granted, within BWC/IC rules and regulations for the IDET (a.k.e. neuroplasty) at L4-5. This order is based on the 09/25/2002 and 02/02/2003 narrative reports from Dr. Andorfer, the discogram and CT Scan of 09/04/2002, and the 05/11/2000 and 04/17/2001 MRI reports. It is Dr. Andorfer's opinion that the injured worker meets the eligibility criteria for the procedure and that it is medically indicated for the treatment of the allowed conditions. The District Hearing Officer further orders that temporary total disability compensation be paid from the date of the IDET procedure upon the submission of appropriate proof of disability.
 {¶ 17} 13. The employer appealed and the matter was heard before an SHO on March 11, 2003, and resulted in an order affirming the prior DHO order. As such, the "IDET" procedure was authorized based upon the reports of Drs. Andorfer and Schulte and it was further indicated that TTD compensation would be payable, upon submission of medical proof, from the date of the procedure and for a reasonable period of time for recovery.
 {¶ 18} 14. Because Dr. Schulte was converting his private practice to a university setting, there was a lengthy delay "getting the equipment to the university as well as to credential matters." As such, the "IDET" procedure was not performed until August 1, 2003. In his letter dated November 2003, Dr. Schulte opined that claimant had been temporarily and totally disabled from July 19, 2002 through the date of the surgery and relator, thereafter, requested that TTD compensation be paid to her from July 20, 2002 through July 31, 2003.
 {¶ 19} 15. Relator's application for TTD compensation from July 20, 2002 through July 31, 2003, was heard before a DHO on January 16, 2004, and was denied. However, the DHO did grant TTD compensation from the date of the "IDET" procedure on as follows:
The District Hearing Officer finds that the IDET procedure was approved by a District Hearing Officer order of 02/13/2003 and Staff Hearing Officer order of 03/11/2003. Both the District Hearing Officer and the Staff Hearing Officer specifically awarded temporary total compensation from the date of the IDET procedure and to continue.
The Self-Insured employer's [sic] has paid temporary total compensation from 08/01/2003 to the present based upon the performance of the IDET.
However, the District Hearing Officer also finds that the injured worker was found to have r[e]ached maximum medical improvement as of 07/19/2002. The District Hearing Officer finds that for the period requested today, there has been no new and changed circumstances demonstrated. Any new and changed circumstances occur[r]ed beginning with the IDET procedure on 08/01/2003.
 {¶ 20} 16. Relator appealed and the matter was heard before an SHO on February 25, 2004. At that time, the DHO order was affirmed as follows:
Temporary total disability compensation was terminated effective 07/19/2002 on a finding of maximum medical improvement. Approximately two months later, the claimant made application for authorization for additional medical procedure, IDET procedure. Authorization for this procedure was granted by order in February and March of 2003, and the procedure was actually performed on 08/01/2003. The Staff Hearing Officer does not find that the later request for a new type of medical procedure, and that procedure later be performed, rises to the level of new and changed circumstances with respect to the period between the find of maximum medical improvement and the procedure being performed. The claimant's medical condition has not be [sic] shown to have changed during that period. There has been no direct demonstration that the expectation at the time of the authorization of the procedure was that, more likely than not, it would improve the claimant's condition, as distinguished from either preventing deterioration, or being an appropriate type of care but nevertheless, less likely than not to create significant improvement. In light of the absence of a demonstration that the later request for and later authorization of a new type of medical procedure retroactive creates new and changed circumstances, the Staff Hearing Officer finds that the claimant's request for compensation during this gap period is not well taken.
 {¶ 21} 17. Relator's further appeal was refused by order of the commission mailed March 16, 2004.
 {¶ 22} 18. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 24} Relator does not challenge the commission's order terminating her TTD compensation as of July 19, 2002, on the basis that she had reached MMI. Instead, relator contends that her medical condition changed when her physician recommended that she undergo the "IDET" surgical procedure. The commission disagreed, finding that her physical condition had not changed, but that the surgical procedure itself was a "new and changed circumstance" which warranted a new period of TTD compensation. For the following reasons, this magistrate finds that the commission did not abuse its discretion.
 {¶ 25} Under Ohio law, it is well-established that a termination of TTD compensation does not preclude a reinstatement of compensation if circumstances change and the claimant experiences a flare-up of a permanent condition or a relapse after a return to work that again causes temporary and total disability. See R.C. 4123.56(A). In State ex rel.Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424, the claimant's condition had been found to be permanent, and the court relied on the commission's continuing jurisdiction under R.C. 4123.52 to reinstate TTD compensation when there are new and changed circumstances, such as a flare-up or exacerbation of the condition that had previously reached MMI. Similarily, the court stated in State ex rel. Navistar Internatl.Transp. Corp. v. Indus. Comm. (1993), 66 Ohio St.3d 267, that, where a TTD compensation had ceased on the basis of the ability to return to work, a subsequent relapse can warrant a reinstatement of TTD compensation pursuant to R.C. 4123.52. Furthermore, after the injured worker reaches MMI or has returned to work, a disabling surgery can constitute new and changed circumstances warranting a period of reinstated TTD compensation until the claimant has recuperated from the surgery. State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158.
 {¶ 26} In Bing, Navistar and Chrsyler, the repeated requirement was that the claimant must demonstrate a functional change in his medical condition. Furthermore, in order for TTD compensation to be reinstated, the court made clear that the disability must not only be total (preventing performance of the former position of employment) but must also be temporary (not yet having reached MMI). Under Ohio Adm. Code4121-3-32(A)(1), MMI is a status where no improvement or fundamental functional or physiological change can be expected from further treatment. Therefore, in cases where there is no newly allowed condition on which to base a new period of TTD compensation, TTD compensation can be reinstated where the claimant establishes a change in circumstances such as a flare-up or relapse of the allowed condition that causes a new period of disability that is temporary and total. Furthermore, surgery for an allowed condition constitutes new and changed circumstances.
 {¶ 27} In the present case, relator did not present any evidence that her physical condition had changed between the time that she was determined to be MMI and the time that her treating physician referred her to a surgeon for the "IDET" procedure. The only thing that changed was that relator's treating physician determined to refer relator to another doctor for an experimental procedure which her doctor believed might provide her some relief. MMI is defined as a treatment plateau at which no fundamental functional change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. Ongoing care, and even surgery, may become necessary in the future to maintain the claimant's level of functioning even if their condition has not worsened. As stated previously, TTD compensation may be payable from the date of that surgery. In State ex rel. Josephson v.Indus. Comm., 101 Ohio St.3d 195, 2004-Ohio-737, at ¶ 16, the Ohio Supreme Court reviewed the same case law enumerated herein and concluded that:
These cases establish that, to date, the only new and changed circumstance sufficient to re-entitle a worker to TTC is the worsening of the claimant's allowed conditions accompanied by a prognosis that the worsening is only temporary. * * *
 {¶ 28} Because relator's physical condition did not change, she was not able to present medical evidence of a flare-up or exacerbation of her condition.
 {¶ 29} In the present case, there is no evidence that claimant's condition worsened. While evidence that her physician believed she would benefit from "IDET" surgery could have been relied upon by the commission to determine that relator had not reached MMI, that evidence was not relied upon and relator does not challenge the commission's determination that she had previously reached MMI. As such, because relator did not show a change in her physical condition, the commission did not abuse its discretion by finding that she did not demonstrate "new and changed circumstances" until the date of the "IDET" surgery.
 {¶ 30} Based on the foregoing, it is this magistrate's conclusion that relator had not demonstrated that the commission abused its discretion in denying relator's request for TTD compensation from July 20, 2002 through July 31, 2003, and that this court deny relator's request for a writ of mandamus.